JEREMIAH DAVY v. SETH H. FIELD, late Sheriff of Otsego county.

A sheriff attached property of an absconding debtor, under warrants issued in several suits, all of which were prosecuted to judgment. He converted the assets attached, into money, from time to time, and satisfied the executions issued upon the judgments, except that of the plaintiff in this case, whose was the last suit commenced, upon which a warrant of attachment was issued. This execution he returned unsatisfied, there being no moneys in his hands at the time to satisfy the same, and no property which he was authorized to convert into money by sale.

Subsequently he made collections of notes and accounts which he had previously attached, and in 1854, under an order of the court, also sold the remainder of such notes and accounts and choses in action. He had realized a sufficient amount, previous to June, 1853, to have satisfied the plaintiff's as well as prior claims.

Neglecting to pay over the same, the plaintiff commenced this action in June, 1856, more than three years after, as it appears, the defendant had received moneys sufficient to pay the plaintiff's judgment.

Held, that the property attached constituted a single fund, out of which the sheriff was bound to pay the judgments in their order, until the whole fund was exhausted. Hence, the statute of limitations (section 92 of the Code) did not begin to run the moment the sheriff had collected enough from the assets to satisfy the plaintiff's judgment.

Before a public officer can be permitted to retain moneys, which his duty requires him to pay over, he should be able to show a clear defense, that is, he must bring himself within the statute.

APPEAL from Supreme Court. The action was brought to recover money of the defendant, collected by him as sheriff of Otsego county, upon an attachment (which was placed in his hands on 20th March, 1852), in an action in the Supreme Court, in favor of the plaintiff, against one Benjamin Barrett, in which action the plaintiff obtained judgment, June 12, 1852, for $456.41. The defendant answered, denying the allegations of the complaint, except that he was such sheriff, and, as an affirmative defense, set up the three years' statute of limitations.

The cause came on for trial before Mr. Justice Balcom and a jury, at the Otsego Circuit, in December, 1857. The

evidence, which was mainly on the part of the plaintiff, and in respect to which there was no contradiction, disclosed these facts : In March, 1852, several actions were commenced in the Supreme Court against one Benjamin Barrett, an absconding debtor.   Attachments were issued in those actions against the property of Barrett, and delivered to the defendant as sheriff of Otsego county, at the times respectively as follows : First, one in favor of Garrish Barrett, for $903.62, interest and costs, March 19, 1852 ; second, one in favor of Benjamin Rathbun, for $851.81 and costs, March 20, 1852, at twenty minutes past twelve P. M. ; third, one in favor of Alby Ann Coates and others for $1,436.32 and costs, March 20, 1852, at twenty-five minutes past twelve P. M. ; fourth, one in favor of Nicholas Genter for $949.62 and costs, March 20, 1852, at fifteen minutes past two P. M. ; fifth, one in favor of plaintiff (Jeremiah Davy), for $400 and costs, March 20, 1852, at ten minutes past seven o'clock P. M.   The defendant attached the property of Barrett, and with the aid of appraisers made an inventory thereof, and filed the same with the judge who issued the attachments on 10th April, 1852.   The inventory showed that property consisting of real estate, personal chattels, notes, book accounts and other choses in action was attached and appraised at the sum of $14,100.01 including bad and doubtful demands. Judgments were recovered in the actions at the times, for the amounts, and in favor of the persons respectively as follows: First, Garrish Barrett, June 9, 1852, for $1,052.17; second, Benjamin Rathbun, June 26, 1852, for $915.27 ; third, Alby Ann Coates and others, June 9, 1852, for $1,511.64 ; fourth, Nicholas Genter, June 26, 1852, for $1,008.96 ; fifth, Jeremiah Davy (the plaintiff,) June 12, 1852, for $456.41.   Executions were issued upon these judgments to the defendant as sheriff.   That of the plaintiff was received by him on the 12th June 1852, and was returned by him in person wholly unsatisfied on 24th November, 1852.

It was proved that in April and May, 1852, the defendant sold perishable property seized under the attachments, to the

amount of $1,414.41; and that after the judgments were obtained he made sales of the attached property under the executions to the following amounts : July, 1852, $1,566.03 ; August, 1852, $104.37 ; October 2, 1852, $718.55 ; October 5, 1852 (real estate), $812, making, in all, of perishable property and that sold under the executions, $4.615.36. The amount of the judgments prior in lien to that of the plaintiff, exclusive of interest thereon and sheriff's fees on attachments and executions, was $4,488.04.

It was also proved that one Farnham, a deputy, and acting for defendant, collected on notes attached, $244.26 ; and of the book accounts, $492.82, making in all $737.08. The notes were collected prior to May, 1853. About two-thirds of the collections of book accounts were made from time to time, before April, 1853, and about half of the other third before 1st June of that year. On 22d June, 1853, the defendant collected an account of $92. On the 19th December, 1853, he collected a note for $89.18. In May and June, 1854, he sold the notes, accounts and things in action attached by him and which remained uncollected. These sales amounted to $528.32. The amount received in all, from the collections and sales of the notes, accounts and choses in action as proved, was $1,446.58. The amount due on the plaintiff's judgment at the time of the trial, of principal and interest, was $632.12.

On the 18th April, 1856, the plaintiff's attorney presented to the defendant a transcript of the judgment in favor of the plaintiff against Barrett, and demanded of him the money, claiming of him the money on the attachment in that case, which he had never returned. He said it should be settled. Before this he had been called on to settle the matter, promised to do so, and fixed times to have it settled, and it so continued until the last demand, in April, 1856. On the 5th June, 1856, this action was commenced. The defendant proved, under objection, that four attachments against Barrett's property were delivered to him subsequently to that of the plaintiff; that the parties recovered judgments and issued executions thereon.

At the close of the evidence the defendant requested the court to rule and decide and charge the jury, first, that the action was barred by the statute of limitations ; second, that the statute of limitations commenced running from the time the defendant had collected of Barrett's property and effects sufficient to satisfy the plaintiff's attachment, judgment and execution, after satisfying those which were prior in time to the plaintiff's; third, that if the defendant had collected sufficient, more than three years before the commencement of the action, to satisfy the attachments, judgments and executions prior to the plaintiff's, and also the plaintiff's, the statute of limitations commenced running from that time, although sales were made by the defendant and money collected by him within three years ; fourth, that any amount collected by the defendant after he had collected sufficient to satisfy the plaintiff's and all prior attachments and judgments was applicable to, and the law would apply it upon, the attachments and executions received by the defendant subsequent to the plaintiff's. The judge refused to so rule and decide and charge the jury as to either of the propositions.

The defendant requested the court to charge, that, if the defendant had collected sufficient in any manner, upon the plaintiff's and all prior attachments and judgments, to satisfy them, more than three years before the commencement of the action, then the action was barred by the statute, and the plaintiff could not recover. The judge refused, and there was an exception.

The defendant requested the court to submit it to the jury as a question of fact, whether the defendant had collected sufficient to satisfy the plaintiff's and the other attachments and executions that were prior in their liens to his, more than three years before the commencement of the action. This was refused.

The case states that the court refused to rule or charge as hereinbefore requested, on the ground that the following ruling disposed of the entire case:

1. That the notes and choses in action attached constituted but one fund or security for the attaching creditors, and that

the right of the plaintiff to recover any portion of the moneys collected thereon or received for sales thereof, was not barred by the statute of limitations at the time this action was commenced.

2. That the plaintiff's right to recover money received by the defendant for property sold on execution, was barred by the statute of limitations.

3. That if sufficient money was received by the defendant for sales on execution, to satisfy the plaintiff's attachment and judgment, and the older ones against Barrett, to which such moneys were applicable, the plaintiff could not recover.

4. That the moneys received by the defendant for property sold on executions, were sufficient only with the money received by him for the perishable property sold, to satisfy the judgments older than the plaintiff's and the sheriff's fees on the attachments and executions older than the plaintiff's ; and that no part of the moneys received by the defendant for the perishable property, or for the property sold on execution, including that received by him for the bark in Cherry Valley, and for rent, was applicable to the satisfaction of the plaintiff's judgment or execution against Barrett, for the reason that, by law, such moneys were applicable to the payment of the judgments and executions older than the plaintiff's, and did not more than satisfy them.

To the first and fourth of those propositions or rulings, the defendant excepted.

The court also ruled and decided, that the evidence showed the defendant had sufficient moneys in his hands, which he received on the notes and choses in action attached, and for such of them as he had sold, justly applicable to the payment of the plaintiff's judgment and execution, to satisfy the same. To this ruling the defendant excepted.

The court then directed the jury to find a verdict in favor of the plaintiff, for $632.12, being the amount of his judgment, to which direction the defendant excepted.

On appeal from the judgment entered on the verdict to the General Term, the same was affirmed. The defendant appeals to this court.

*De Witt C. Bates*, for the plaintiff.

*J. H. Reynolds*, for the defendant.

WRIGHT, J.  The facts upon which any question arises were undisputed, and these, in substance: In March, 1852, five parties, one being the plaintiff, commenced actions in the Supreme Court, against Benjamin Barrett, an absconding debtor. Warrants to attach Barrett's property were duly issued in each of the cases, by a justice of the Supreme Court, and delivered to the defendant, as sheriff of the county of Otsego. In the order in which they were received by the defendant, the attachment obtained by the plaintiff was the last of the series. On the day of their reception, the defendant attached certain of Barrett's property, consisting of real and personal estate, liable to be sold under execution, and notes, book accounts, and other choses in action. Some months afterward, he sold, as perishable, a portion of the property so seized, the proceeds of such sale amounting to $1,441.41. In June, 1852, the attaching creditors obtained judgments; four of them (amounting in the aggregate to $4,488.04) being prior in their liens upon the attached property to the plaintiff's judgment, by reason of the prior attachments. The plaintiff's judgment was docketed for the sum of $456.41. Executions were issued to the defendant upon all the judgments; and at different periods, in the months of July, August and October, he sold all of the property seized, liable to be sold under execution. The proceeds of these sales footed at $3,200.95. There was, therefore, realized from the sales of property which could by law be sold under execution, the sum of $4,615. The total of the judgments prior in lien to that of the plaintiff, with accumulative interest, and the defendant's fees on the attachments and executions, was in excess of this amount, leaving nothing of the proceeds of those sales to reach and satisfy the plaintiff's execution; and the defendant returned such execution wholly unsatisfied, in November, 1852. Of the notes and other choses in action, seized or attached, and

which could not be sold under execution, it appeared that the defendant collected to the amount of $918.26. A part of the money he had in his hands (perhaps $650), before June, 1853. He continued to make collections until May, 1854, when, by an order of the court, he sold at public auction all the notes, and other choses in action attached, remaining uncollected. The proceeds of this sale were $528.32; making a total of moneys that had come to his hands in June, 1854, from collections and sales of the notes and other choses in action seized or attached, of $1,446, and much more than enough to satisfy any deficit of prior liens and the plaintiff's judgment. Soon after the sale of the notes and choses in action, and the proceeds thereof had come into the defendant's hands, application was made to him by the plaintiff to pay over the money to satisfy his judgment. This he promised, from time to time, to do, until April, 1856, when the plaintiff formally demanded the money on his attachment in the case, presenting to him, at the time of demand, a transcript of his judgment. He replied then that it should be settled; but, doing nothing in the way of settlement, and continuing to retain the money, this action was commenced in the early part of June, 1856.

Upon this state of facts there was certainly no defense, unless the one attempted was available, viz., that the statute of limitations provided by section 92 of the Code, was a bar to the action. That section provides that an action against a sheriff, for any liability incurred by him, by the doing of an act, in his official capacity, or by the omission of an official duty, including the non-payment of money collected upon an execution, shall be commenced within three years after the cause of action accrues. It is to be assumed (as the judge denied a request to go to the jury on the question), that the defendant had, by the 1st of June, 1853, converted into money, by collection of choses in action, and sales of perishable property, and by sales upon execution, enough of the property attached to satisfy the four judgments older than the plaintiff's, and also the plaintiff's judgment. The plaintiff's action was not commenced until the 5th of June, 1856; and

it is claimed that, as more than three years elapsed after the
receipt by the defendant of sufficient money to pay prior
liens and the plaintiff's judgment and the commencement of
the action, the action was barred by the statute. The argu-
ment is, that, the sheriff having collected sufficient money,
by virtue of the attachments, by the 1st of June, 1853, to
discharge prior liens and pay the plaintiff's judgment, it was
his duty to pay it over, and the plaintiff had an action for it
at once and without demand, and the moment the plaintiff's
right of action accrued the statute of limitations began to
run. Hence, the right of action accrued in this case more
than three years before the commencement of the action. I
am not prepared to adopt the view that there was any bar,
even upon the concession that the three years' limitation
applied to the case, of which I have great doubt. The
money that came to the hands of the defendant from prop-
erty attached liable to be sold on execution, which consisted
of that which was perishable, and what in fact was sold on
execution, was insufficient to satisfy the four judgments older
than the plaintiff's, and the defendant's fees on the attach-
ments and executions older than his. These moneys were
legally applicable to the payment of the judgments and exe-
cutions older than the plaintiff's judgment; and there was,
therefore, no part of the moneys derived from sales of the
attached property that an execution would reach applicable
to the satisfaction thereof. The defendant, however, by col-
lections and sales, by order of the judge issuing the attach-
ments, of the notes and other choses in action attached, was
shown to have received over the sum of $1,400; and it was
not questioned that when the action was brought he had
sufficient of these moneys in his hands to satisfy the plaint-
iff's judgment.

But a portion of the moneys was collected prior to June,
1853, which, with those realized from sales of the attached
property on execution, were sufficient at that date to satisfy
the four judgments prior to the plaintiff's and the plaintiff's
also; and, this being so, it is claimed to have been the duty
of the sheriff to pay the plaintiff his money at once, and,

omitting to do so, an action accrued to the plaintiff against him. I cannot agree to this conclusion, but am of the opinion that, if the three years' limitation applies to the case, and it is to be held that the non-payment of this money, viz., the avails of the notes and choses in action attached, is an omission, the same as the non-payment of money collected on executions, the action was brought in time. The notes, accounts and evidences of debt constituted a single fund, out of which the defendant was bound to pay the judgments in their order, until the whole fund was exhausted. A fund realized by virtue of attachments, out of property which cannot be sold on execution, is as much a single fund as the amount of money coming into the hands of a receiver from the avails of a judgment debtor's property. In such cases numerous questions are liable to occur affecting the priority of liens, or even the validity of an attachment or a judgment, and the sheriff not only has the right, I think, but it is his duty, to retain in his hands the funds until the whole should be collected and conflicting claims determined. The notes and choses in action attached constituting but a single fund or security for the attaching creditors, the statute of limitations did not begin to run the moment the defendant had collected enough therefrom to satisfy the first judgment or execution. The statute invoked, therefore, was no bar to the plaintiff's action.

I fully concur in expression with the judge of the court below, that, before the defendant, as a public officer, should be permitted to retain in his pocket, moneys which his duty required him to pay over to the plaintiff, he should be able to show a clear defense, or, in other words, he must bring himself within the statute. In my opinion, he has failed to do so in this case.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.