## VAN KLEEK v. LEROY.

[Affirming 37 Barb. 544.]

In an action by the seller to recover back goods from the possession of defendant, on the ground that the buyer, under whom defendant claims, procured the sale, on credit, by fraudulent representations, plaintiff may prove the fraudulent intent not to pay, either by direct statements shown to be untrue, or by circumstances tending to the same result.

A direct misrepresentation to the plaintiff having been proved, it is competent to prove similar fraudulent representations made to another person in a different transaction, as bearing upon the question of intent.

Such similar frauds, however, are not *alone* sufficient to sustain a recovery, even if it be shown that the representations were communicated to the plaintiff, and that he acted on the faith of them, unless it be also shown that the buyer, in making such representations, intended them to be so communicated.

William H. Van Kleek sued Philip Leroy and William H. Deyo, in the supreme court, to recover certain goods, on the

ground that they had been purchased by William F. Leroy under fraudulent representations as to his circumstances and responsibility.

A few weeks after the purchase, W. F. Leroy made an assignment to defendants, for the benefit of creditors. The property claimed was replevied from defendants shortly after the assignment.

On the trial, it appeared that W. F. Leroy had for some time been dealing on credit with plaintiff. The goods in question were purchased in December, 1870, and at the time of the purchase Leroy told plaintiff that he was responsible for all the goods he would buy, &c.

Plaintiff made inquiries of third persons in regard to Leroy's responsibility; among whom was one Kenworthy. Before the sale of the goods, Leroy had been questioned by Kenworthy in regard to a bill that K. was about to sell him, and was told by Leroy that he was worth two thousand or three thousand dollars, and was perfectly good.

The jury found a verdict for defendants. . With regard to the representations to Kenworthy, the court charged as follows :

"That if the plaintiff made, or was influenced to make, the sale, upon the strength of the representations made to Kenworthy, the sale was not for that reason fraudulent, unless the jury believed that the representations were made to Kenworthy with intent that the same should be communicated to the plaintiff, and should influence his conduct."

To the latter part of the charge plaintiff excepted.

*The supreme court* held the charge correct, and gave judgment for defendants. Reported in 37 *Barb.* 544. Plaintiff appealed.

*M. Schoonmaker*, for the plaintiff, appellant.

*Erastus Cooke*, for the defendants, respondents.

. BY THE COURT.—HUNT, J.—The general principles involved in the question now before us are well settled. A purchase of goods upon fraudulent representations of the situation of the buyer, gives no title to the fraudulent vendee. A purchase of goods, with the preconceived design not to pay for them, is a

fraudulent purchase, subject to the same consequences. An actual insolvency at the time of the purchase, but accompanied with an honest expectation, on the part of the purchaser, that he will be able to retrieve his fortunes, and where no representation is made, does not necessarily create a fraud. Hall *v.* Naylor, 18 *N. Y.* 588; Nichols *v.* Pinner, *ld.* 295; Hennequin *v.* Naylor, 24 *N. Y.* 139; Cary *v.* Hotailing, 1 *Hill,* 311.

It has been repeatedly decided in this state that, in such cases, evidence of fraudulent purchases from parties, other than the plaintiff, might be proved on the trial, to establish the purpose and intent with which the purchase in question was made.

Thus in Cary *v.* Hotailing, *supra,* Judge COWEN said (p. 316) : " On questions of intent to defraud, other acts similar to the offense charged, done at or about the same time, or when the same motive to offend ·may reasonably be supposed to have existed as that which is in issue, are admissible with a view to the *quo animo.* The case of fraud is among the few exceptions to the general rule, that other offenses of the accused are not relevant to establish the main charge."

In Hall *v.* Naylor, *supra,* Judge COMSTOCK says: On " the trial of such an issue the *quo animo* of the transaction is the .fact to be arrived at; and it is, therefore, competent to show that the party accused was engaged in other similar frauds, at or about the same time. The transactions must be connected in point of time, and so similar in their other relations that the same motive may reasonably be imputed to them all."

It was accordingly held that the representation made to a former seller, who had become alarmed, but where debt was not due, was not competent. evidence.

In Hennequin *v.* Naylor, *supra,* after laying down the general rule, Judge JAMES says : " In cases where there is no overt act of fraud, it is often very difficult to prove a dishonest purpose. In all such cases, instead of proving false representations, or other fraudulent practices, resort is had to various incidents and circumstances which are calculated to exhibit the hidden purposes of the actor's mind. So in this case: Kerr and Adams were not guilty of any overt act of·fraud in the purchase of goods sought to be recovered ;

IV.—31

nor did they make any representations one way or the other as to their pecuniary condition, and hence proof was made of their pecuniary situation, the facts and circumstances connected therewith, and their acts and conduct in relation to their other purchases and as to this purchase, in order to determine the motive and intent with which it was made."

In each case, as it is presented in court, a substantial cause of action must be established by the plaintiff. He must prove a purchase, and a fraudulent intent existing in the mind of the purchaser, when he purchased the goods, to obtain the property without paying for it. This may be done by proof of direct statements, which are shown to be untrue, or by proof of circumstances tending to the same result. In the case before us, the purchaser made a direct representation, as testified to by the plaintiff, which would have justified the jury in finding that the purchase was fraudulent. The judge charged, in relation to this point, that "if the goods were purchased by statements which were false, and known to be so by the purchaser, no title passed."

This was a sound exposition of the law, and was all that either party had a right to ask.

It was said, however, that the purchaser had made a fraudulent representation to Mr. Kenworthy, upon making a purchase from him, at about the same time. Proof of this fact was made, and it would have been erroneous to have excluded it. It was competent evidence of a distinct offense, to establish the *quo animo* in the case in hand.

It was not, however, of itself competent to establish the plaintiff's cause of action. On the trial of a prisoner charged with passing counterfeit money, it is competent to prove that the accused offered similar money at about the same time to other persons, but upon the question of intent only. Proof that he attempted to pass his spurious money upon a dozen other persons would afford no legal evidence that he had passed it to the prosecutor, or that it was spurious. These are the points in issue to be first established by independent evidence, and when established the intent may be aided by the extrinsic transactions. There is no legal connection between an attempt to cheat one person and an attempt to cheat another. Nor is

there any legal objection to the idea that a counterfeiter or a purchaser may intend to cheat one person, and not wish or intend to cheat another.

The fraud upon the plaintiff here must be established by competent proof. An attempt to defraud Kenworthy affords no legal evidence that the same man attempted to defraud Van Kleek. An undisciplined mind might say that if Leroy would cheat one man, he would cheat another; and it appearing that he cheated Kenworthy, I will assume that he cheated the plaintiff. This, however, is neither law nor logic.

The authorities I have cited show that this fact was competent to be proved, as bearing upon the motive and intent of Leroy in making the purchase. It was a balanced case. The plaintiff proved representations, as well as numerous facts and circumstances, tending to show that Leroy intended to defraud him in making the purchase.

The defendants showed various facts and circumstances tending to re-establish the good faith of the purchase. That being the precise point in the controversy, it became quite important to establish the fraudulent representations to Kenworthy.

If he had attempted to cheat him, the jury would give such effect to that fact as they thought proper, in determining the question of good or bad faith then before them. This fact the jury had, and this was all they were entitled to.

To hold that the fraud upon Kenworthy, which was not committed upon the plaintiff, unless the statement on which it was based, was intended by the purchaser to be communicated to him, established the plaintiff's cause of action, would be going beyond any reported case, and beyond all sound principle. Allen *v.* Addington, 7 *Wend.* 9.

The representations must be made to the seller (when representation is the mode of fraud resorted to), or must have been intended to be communicated to him. Statements to a stranger, not intended for the plaintiff, can not give a ground of action. Each case depends on its own circumstances, and must be decided on its own facts.

The judgment should be affirmed.

All the judges concurred except GROVER, J., who delivered a dissenting opinion, and BOCKES, J., who did not vote.

Judgment affirmed, with costs.