Pike *v.* Wieting.

---

SAMUEL PIKE and others *vs.* JOHN M. WIETING and DAMON COATS, assignees of Henry Clay Barnes.

A liquor merchant in Syracuse, in former good standing with the plaintiffs' firm in New York, gave a verbal order to the plaintiffs for a bill of goods on credit, which were sent to him by railroad and left in a storehouse at Syracuse. The merchant was in fact insolvent, and became fully aware of it before he paid the freight and took the goods into his custody; *Held*, that the judge properly instructed the jury that it would be a fraud upon the plaintiffs, sufficient to avoid the sale, if they believed, upon the evidence, that the pur-

Pike *v.* Wieting.

chaser received the goods with a preconceived design not to pay for them, although he had no such design when he gave the order.

*Held, also,* that the receipt by mail of the bill of goods by the purchaser, containing the terms of sale, would not take the contract out of the statute of frauds, but either party might repudiate it at any time before the actual receipt and acceptance of the goods by the purchaser.

THIS action was brought by the plaintiffs, liquor dealers in the city of New York, to recover the possession of twenty barrels of pure spirits, shipped upon the verbal order of Henry Clay Barnes after the 23d day of June, 1866, and taken from the storehouse by Barnes on the 2d day of July. The plaintiffs succeeded in finding eleven barrels, the residue having been disposed of by Barnes before the suit was commenced. The question litigated on the trial was whether the purchase was fraudulent, Barnes being insolvent and having made an assignment on the 3d day of July, the day after he received the liquor.

Several exceptions were taken to the charge of the judge by the defendants, which are sufficiently noticed in the opinion of the court. The jury having found for the plaintiffs, these exceptions were ordered to be heard in the first instance at general term.

*H. B. Smith,* for the plaintiffs.

*D. Pratt,* for the defendants.

*By the Court,* MORGAN, J. The evidence in this case would have authorized the jury to find that, although Barnes was actually insolvent when he gave the verbal order for the goods on the 23d of June, yet that he was ignorant of it, and had no intention of defrauding the plaintiffs at that time ; but that he was fully aware of his condition when he took the goods from the storehouse, on the 2d day of July, and then contemplated making an assignment. It appeared that he received a bill of the goods on the 27th or 28th of June, in which the price was stated and the terms of sale. The goods were billed to him on a credit of seventy-

five days. It also appeared that Barnes had been in the habit of purchasing goods of the plaintiffs for some three years, and that his credit had been good.

The defendants' counsel requested the judge to charge the jury, that in order to sustain this action the plaintiffs must show that when Barnes purchased the goods he did so fraudulently ; that the sale was complete when the property was shipped, or at all events, when Barnes received a bill of the goods ; that if at the time the goods were shipped, and at the time Barnes received the bill of goods, he had no fraudulent intention, the plaintiffs could not recover ; that if at the time Barnes gave the order he had no fraudulent intent, the plaintiffs could not recover ; that if Barnes was honest at the time he gave the order and up to the time of the receipt of the property, although he received the property with the intention not to pay, the sale was valid ; that whether the contract of sale was complete within the statute of frauds, or not, before the actual receipt of the goods, yet when the goods were so received, it became a valid sale from the beginning.

The defendant's counsel excepted to the refusal of the judge to charge these various propositions ; and the question is, whether it was error in the judge to refuse either of them.

The judge had already charged the jury that it was important to determine when the sale was made, because the intent to defraud must have existed at the time of the sale ; and that Mr. Barnes had a right to repudiate the sale and return the goods at any time before acceptance ; and therefore the sale was not complete in law until the second day of July, when he actually accepted the property and took possession ; that if at that time he was insolvent, and received the property with the intention not to pay for it, he was guilty of fraud. The defendant's counsel excepted to these propositions.

Taking the whole charge together, and the refusal of the judge to charge the defendant's propositions, the single question presented is, whether on an *executory sale*, void by the

statute of frauds, the intervening insolvency of the purchaser, and the preconceived intent not to pay for the goods formed at the time they are received and accepted by the purchaser, avoids the sale upon the ground of fraud. The general proposition that upon a sale of goods, the insolvency of the purchaser, coupled with a preconceived design not to pay for the property, is evidence of fraud, cannot be disputed ; especially when a merchant in former good standing, knowing of his insolvency, makes a new purchase without disclosing his changed circumstances.

In *Brown* v. *Montgomery*, (20 *N. Y. Rep.* 292, 293,) Judge Denio, in commenting upon the case of *Nichols* v. *Pinner*, (18 *id.* 295,) observes :. "There we decided that when a merchant, knowing himself to be insolvent, purchases goods without disclosing the fact, there being no inquiry made, he is not *necessarily* guilty of fraud, as he may honestly believe that he may go on and retrieve his affairs. * * * But the case does not countenance the position that a dealer who has been of known standing, but who has suddenly failed in business, can go to those who were acquainted with his former character, but who have not heard of his failure, and *innocently* purchase their property on credit. Judge Selden, in his opinion, put that case as not covered by the judgment."

There can be no doubt that it would have been the duty of Barnes to communicate his situation to the plaintiff when he ordered the goods, if he had then known of his insolvency. But as the case was left to the jury, the question turns upon the effect of his subsequent conduct in receiving the goods after knowledge of his insolvency. Without doubt, the evidence in this case furnishes sufficient grounds for the conclusion that when Barnes accepted the goods, on the second day of July, he not only knew that he was insolvent, but he had already commenced proceedings for making an assignment of his property ; and that he did not then either expect or intend to pay for the goods.

It was claimed on the trial, by the defendant's counsel, that the contract was complete when Barnes received the bill of goods, on the 27th or 28th of June, and some of the exceptions are founded upon that hypothesis. But I think it is too plain for argument, that an acceptance cannot be based upon the receipt of the bill by the purchaser, for he is not to be concluded until he has an opportunity of examining the goods.

The contract of purchase was not only *executory* but invalid in law, until the receipt and acceptance of the goods by Barnes on the 2d day of July. Until then it was open to either party to refuse to complete the sale.

Could Barnes dishonestly accept goods on that day, which he had honestly ordered on the 23d day of June? For the jury might have found that he intended to pay for them when ordered, but that he did not intend to pay for them when he closed the contract by his acceptance of them.

In my opinion, a purchaser of goods under an executory contract of sale, void until acceptance, is guilty of fraud, if before he concludes the purchase, he becomes hopelessly insolvent, and afterwards takes a delivery of them with a design not to pay. The receipt and acceptance of goods purchased under such circumstances is part and parcel of the contract; and I think the purchaser has no legal, as he certainly has no moral right, thus to deprive the owner of his property, when he neither expects to, or believes he can, pay for it; and if it is the duty of an insolvent purchaser to notify his vendor of his changed circumstances before he orders the goods, it is equally his duty to notify him when his insolvency occurs, or first becomes known to him, intermediate his order and acceptance of the property.

I think the case was fairly presented to the jury, and that the verdict must stand. The motion for a new trial should be denied with costs.

Motion denied.

[Onondaga General Term, June 25, 1867. *Morgan, Bacon, Foster* and *Mullin*, Justices.]